**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TAPESTRY MANAGEMENT SERVICES, INC., *et al.,*[1]<br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11777 (TMH)<br><br>RE: Docket No. 69 |
| TAPESTRY TELEHEALTH, PLLC, CHESS MEDICINE PLLC, TOPAZ BAY SENIOR HEALTH PC, EMERALD FERN WELLNESS PC, ROSEWOOD HILLS HEALTHCARE PC, CHESS MEDICAL, P.C., and TAPESTRY MEDICAL, P.C.,<br>Plaintiffs,<br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary, United States Department of Health and Human Services; DR. MEHMET OZ, in his official capacity as Administrator, Centers for Medicare & Medicaid Services; THE UNITED STATES OF AMERICA; NOVITAS SOLUTIONS, INC.; WISCONSIN PHYSICIANS SERVICE INSURANCE CORP.; PALMETTO GBA, LLC; NORIDIAN HEALTHCARE SOLUTIONS, LLC; FIRST COAST SERVICE OPTIONS, INC.; CGS ADMINISTRATORS, LLC; and NATIONAL GOVERNMENT SERVICES, INC.,<br>Defendants | Adv. Proc. No. 26-51120 (TMH)<br><br>**STIPULATION AND AGREED ORDER RESOLVING DEBTORS' EMERGENCY MOTION TO ENFORCE THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MOTION FOR TURNOVER OF SUSPENDED PRE-PETITION MEDICARE REIMBURSEMENTS**<br><br>RE: Docket Nos. 4 & 5 |

---

[1] The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's federal tax identification number, are Tapestry Management Services, Inc. (9744), Tapestry Pharmacy Consulting LLC (2776), Chess Medical, P.C. (4399), Chess Medicine PLLC (2119), Emerald Fern Wellness PC (8794), Tapestry Health PLLC (2498), Tapestry Medical, P.C. (9757), Tapestry Medicine PLLC (1329), Tapestry Telehealth PLLC (2399), Topaz Bay Senior Health PC (2183), and Rosewood Hills Healthcare PC (1207). The location of the debtors' service address is: 99 Hawley Lane, Suite 1102, Stratford, CT 06614.

# STIPULATION AND AGREED ORDER RESOLVING DEBTORS' EMERGENCY MOTION TO ENFORCE THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MOTION FOR TURNOVER OF SUSPENDED PRE-PETITION MEDICARE REIMBURSEMENTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the United States of America, on behalf of the United States Department of Health and Human Services ("HHS"), its designated component, the Centers for Medicare and Medicaid Services, ("CMS"), HHS and CMS agents and contractors, the US Department of Justice (the "DOJ") any other law enforcement or investigative agencies and all other defendants in the above-captioned adversary proceeding and (collectively referred to as the "United States" and collectively with the Debtors as the "Parties" and each individually, a "Party") hereby stipulate as follows:

## RECITALS

### The Parties

A. Tapestry Management Services, Inc. ("TapestryHealth") represents that it provides management and administrative services to Plaintiffs and other affiliated practices, each of which bills Medicare for the services it furnishes (other than Tapestry Medical, whose Medicare enrollment has not been completed). Debtors allege that, through their physicians and other licensed practitioners, they furnish certain clinical services to skilled nursing facilities ("SNF") residents, supported by monitoring and risk reporting functions.

B. CMS, a component agency of HHS, together with its agents and contractors, administers the Medicare program under provisions in Title 42 of the United States Code, 42 U.S.C. § 1395 *et seq.,* and regulations promulgated in Chapter IV of Title 42 of the Code of Federal Regulations, (the "Medicare Program"). The Medicare Program is a federally funded health insurance program primarily designed to cover medical care for the elderly and disabled.

**The Medicare Payment Suspensions**

C. Prior to the Petition Date, CMS, after consulting with the Department of Health and Human Services Office of Inspector General ("OIG"), exercised its statutory and regulatory authority under the Medicare Act, 42 U.S.C. § 1395 *et seq.,* and related regulations contained in title 42 of the Code of Federal Regulations (collectively, the "Medicare Statute") to suspend Medicare reimbursements to certain of the Debtors on the alleged basis of "credible allegations of fraud" (each a "Medicare Suspension"). *See* 42 U.S.C. § 1395y(o).

D. Among the entities subject to the Medicare Suspensions are Chess Medical, P.C., whose payments were suspended as of October 8, 2026; Emerald Fern Wellness PC ("Emerald Fern"), whose payments were suspended effective October 6, 2026; Topaz Bay Senior Health PC ("Topaz Bay") whose payments were suspended effective January 16, 2026; Chess Medicine PLLC ("Chess Medicine"), whose payments were suspended effective August 13, 2026; and Tapestry Telehealth PLLC ("Tapestry Telehealth") whose payments were suspended effective August 11, 2026.

E. The Medicare Suspensions resulted in suspension of approximately $10,038,140.22 in payments for claims submitted by the Debtors to CMS for payment (the "Currently Suspended Amounts").

**The CID Petition, the Chapter 11 Cases and the Basis of this Agreement**

F. On November 3, 2026 the United States filed the *Petition of the United States for Summary Enforcement of Civil Investigative Demands 26-014, 26-015, 26-016, 26-017, and 26-036* (the "Petition") in the United States District Court for the Southern District of New York (the "SDNY") alleging that Debtors Tapestry Management Services, Inc., Tapestry Telehealth PLLC, Chess Medicine PLLC, and Chess Medical PC (the "Respondents") failed to comply with civil investigative demands (the "CIDs") issued under the False Claims Act 31 U.S.C. § 3733(j) (the

"FCA") and requesting the SDNY (a) enter an order to show cause as to why Respondents should not be compelled to comply with the CIDs and (b) enter an order directing Respondents to respond to the CIDs.

G. On November 6, 2026 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

H. The filing of each Debtor's chapter 11 case (together, the "Chapter 11 Cases") created an automatic stay under § 362 of the Bankruptcy Code.

I. On November 6, 2026, the Debtors filed a complaint in the Chapter 11 Cases, initiating this adversary proceeding seeking enforcement of the automatic stay, or in the alternative, injunctive relief, as well as turnover of all suspended Medicare payments (the "Complaint").

J. As more fully set forth in the Complaint, the Debtors contend that the Medicare Suspensions violate the automatic stay.

K. As more fully set forth in the Complaint, the Debtors also contend that the suspended Medicare payments constitute property of the Debtors' bankruptcy estates and should be turned over pursuant to §§ 541 and 542 of the Bankruptcy Code.

L. The United States disputes the Debtors' contentions. The United States asserts that the Medicare Suspensions constitute a police and regulatory act attendant on CMS' investigation into "credible allegations of fraud," *see* 42 U.S.C. § 1395y(o); 42 C.F.R. § 405.372(a)(4)(iii) and 42 C.F.R. § 405.371(a)(2). Accordingly, CMS contends that continuation of the Medicare Suspension is excepted from the automatic stay under 11 U.S.C. § 362(b)(4).

M. The United States also contends that Medicare funds suspended during a CMS regulatory fraud investigation are not property of the estate and not subject to "turnover" to the bankruptcy estates under section 542 of the Bankruptcy Code.

N. After good faith, arms-length negotiations, the Parties have determined that, to avoid the costs and risks inherent in litigation, they wish to enter into this Stipulation (the "Stipulation").

**AGREEMENT**

1. The Stipulation shall become effective upon entry of an order of the Court approving the Stipulation (the "Effective Date").

2. From the Effective Date through the Termination Date (as defined below), and subject to the terms set forth in this Stipulation, CMS will limit the Medicare Suspensions to 25% of amounts payable on claims submitted by the Debtors before, on, and after the Petition Date (the "Continuing Suspended Payments"), whether such claims relate to dates of service prior to, or after, the Petition Date, and CMS will remove the Medicare Suspension from 75% of amounts payable on claims submitted by the Debtors before, on, or after the Petition Date (the "Released Payments"), whether such claims relate to dates of service prior to, or after, the Petition Date.

3. On or immediately after the Effective Date, CMS will make reasonable and good faith efforts to implement the modifications to the Medicare Suspensions within thirty (30) days of the Effective Date (the "Modification Deadline"), *provided that* in no event shall the failure of the United States or any of its agents or contractors, despite reasonable and good faith efforts, to fully implement the suspension modifications by the Modification Deadline be considered a breach of this Stipulation.

4. Within five days after the Effective Date, (i) the Debtors shall dismiss the Complaint with prejudice subject to the rights set forth in paragraph 15 hereof, and (ii) the United States shall seek to stay the briefing schedule concerning its Petition without prejudice to its right to resume litigation or otherwise seek the relief sought in the Petition as set forth in paragraph 10 hereof.

5. Notwithstanding anything in this Stipulation to the contrary, all claims submitted by the Debtors are and shall remain subject to the Medicare Program's review procedures (including, but not limited to, pre-payment and post-payment review and audit) and may be paid or denied in the ordinary course of business, with the Parties reserving all rights to contest or defend the treatment of particular claims. Nothing in this Stipulation shall constitute a representation or admission by the United States that any of the Debtors' claims comply with any legal requirements.

6. CMS's obligation to release any Released Payments to the Debtors shall be subject to recoupment of amounts due from the Debtors to CMS in the ordinary course of business ("Ordinary Course Overpayments") and shall reduce the amount of Released Payments CMS must remit to the Debtors. As of the date of this Agreement, the United States represents that the amount of the Debtors' Ordinary Course Overpayments is approximately $172,775.42 and that the amount of the Ordinary Course Overpayment may increase before the Released Payments are remitted to Debtors. The Ordinary Course Overpayments shall be recouped from the Released Payments prior to release of such payments to the Debtors in the ordinary course up to the Ordinary Course Recoupment Cap, defined below, without any obligation by the United States to seek relief from the automatic stay or otherwise seek any Court order prior to effectuating such recoupment. The

amount of claims recouped from the Released Payments with respect to Currently Suspended Amounts shall not exceed $300,000 (the "Ordinary Course Recoupment Cap").

7. CMS may continue to hold the Continuing Suspended Payments in suspension during the United States' investigations subject to all of the Debtors' rights under the Medicare Act, regulations, and other applicable law. If and to the extent the United States is deemed to have an allowed claim in these Chapter 11 Cases by an order of this Court (whether arising from an overpayment allegation, the FCA investigation, or otherwise, a "Government Allowed Claim"), the United States shall be entitled, without seeking relief from the automatic stay or any further order of the Court, to set off (to the extent permitted by section 553 of the Bankruptcy Code and applicable law) or recoup (to the extent permitted by applicable law) the amount of such Government Allowed Claim against the Continuing Suspended Payments.

8. The Debtors shall earmark a minimum of $500,000 of the Released Payments for ESI/CID compliance, and the balance of the Released Payments may be used by the Debtors for any purpose permitted under the Bankruptcy Code and any applicable cash collateral or financing order, including ESI/CID compliance in excess of $500,000; *provided, however*, the Debtors, without the prior written consent of the United States, shall make no payments (i) to or for the benefit of those individuals listed on **Exhibit A** to this Stipulation (the "Related Individuals") other than the amounts set forth on **Exhibit A**; or (ii) to any non-Debtor entity in which any of the Related Individuals have an ownership or other financial interest or role as an officer or manager (the "Related Entities"). Nothing in this paragraph 8 shall (A) prohibit payments, distributions or any other treatment to any of the Related Individuals and Related Entities pursuant to a confirmed plan under section 1129 of the Bankruptcy Code, provided that the United States reserves all rights to object to any plan calling for such payments, or to take any appropriate action regarding such

payments, if made; or (B) limit or otherwise impair in any manner whatsoever the rights, claims and ability of the Related Individuals and Related Entities under and pursuant to any insurance policies of the Debtors under which they are insured or otherwise covered, subject in all cases to appropriate notice to the United States and a reasonable opportunity to object. The $500,000 earmarked for ESI/CID compliance shall not be or act as a cap, restriction, limitation or excuse for non-compliance with the CIDs. Notwithstanding anything to the contrary in this Stipulation, nothing contained herein shall impair or otherwise affect, in any manner whatsoever, any rights, claims, or interests of the Related Entities and Related Individuals against or in the Debtors' estates.

9. The Debtors have forensically extracted and will produce on a rolling basis non-privileged ESI of the 36 custodians identified by the United States using the 22 search strings identified by the United States on August 18, 2026, with such productions to be completed not later than 40 days after the Effective Date.

10. The Debtors and the United States will meet and confer to discuss narrowing the scope of the CIDs and endeavor to reach an agreement within 10 business days of the Effective Date concerning the scope of Debtors' required response. If an agreement is reached, then the Debtors will respond to the remaining requests and interrogatories in the CIDs and provide complete responsive document productions and interrogatory responses within 65 days of the Effective Date. The Debtors shall produce a privilege log that complies with the instructions in the CIDs not later than 65 days after the Effective Date. If either (a) the meet and confer does not result in agreement regarding the scope of the CIDs or (b) the Debtors fail to produce the ESI referenced in the preceding paragraph within 40 days of the Effective Date, or if Debtors fail to fully respond to the remaining requests and interrogatories in the CIDs within 65 days of the

Effective Date, or if Debtors fail to produce a compliant privilege log within 65 days of the Effective Date, then the United States will not be restricted in any manner from resuming litigation concerning the Petition or otherwise seeking the relief sought therein. Debtors' obligation and efforts to respond to the CIDs shall not be limited by the amount they have earmarked for ESI/CID compliance, as set forth in paragraph 8. All of the dates set forth in this paragraph 10 may be extended by mutual written consent of the United States and the Debtors without further order of the Court.

11. The Debtors shall make reasonable efforts to cooperate with the United States' FCA investigations, including by making the CRO available to the United States upon reasonable request of the United States and providing the United States access on a reasonable timeframe and terms to the Debtors' books and records upon request by the United States. The CRO, consistent with his fiduciary duties, shall continue to exercise appropriate oversight over the Debtors' postpetition business operations.

12. Subject to paragraph 15 below, in consideration for the United States entering into this Stipulation, the Debtors agree it shall not file any document or assert in any court or tribunal a right to (i) prohibit, condition, limit or enjoin the commencement or continuation of an investigation or audit permitted under this Stipulation, *provided*, *however*, for the avoidance of doubt, the Debtors' rights with respect to any such investigation or audit are otherwise fully preserved, (ii) make any claim relating to, or hold any United States Party in contempt of court for, allegedly violating the automatic stay or violating section 525 of the Bankruptcy Code with respect to actions taken pursuant to this Stipulation before the Termination Date, or (iii) make any claim for, or hold any United States Party in contempt of court for, actions taken prior to the Effective Date related to the matters described in the Complaint. Except as otherwise provided,

this Stipulation does not alter the rights of either Party as they existed on the Petition Date, including without limitation the contentions that each Party has regarding the Debtors' Medicare reimbursement claims.

13. Any of the following shall constitute a breach of this Stipulation by either Party (a "Breach"): (a) a Party's violation of any material term of this Stipulation other than under paragraphs 9 and 10; (b) with respect to the Debtors, the filing, during the term of the Stipulation, of an adversary proceeding, motion or other action by the Debtors asserting that the Medicare Suspensions violate sections 362 or 542 of the Bankruptcy Code, asserting a violation of section 525 of the Bankruptcy Code, or seeking injunctive relief requiring release of the Medicare Suspensions (a "Suspension Challenge"); (c) with respect to the Debtors, any of the Debtors' voluntary disenrollment or voluntary termination as a Medicare provider or supplier under applicable Medicare law and regulations other than in connection with a sale, transfer, or wind-down approved by the Court; (d) a determination by the DOJ or any federal law enforcement or investigative agency consistent with applicable law that any post-petition criminal act or fraudulent act not already part of the FCA investigation has been committed by any Debtor and requires termination of the Stipulation; or (e) a determination by the DOJ or any federal law enforcement or investigative agency consistent with applicable law that the Debtor has made material misrepresentations in this Stipulation.

14. Either Party may terminate this Stipulation upon the other Party's Breach by providing three (3) business days' written notice to the other Party and an opportunity to cure such breach prior to such termination (the "Termination Date"), *provided that* the termination shall take effect on the Termination Date and shall remain in effect unless the Court orders otherwise. If Debtors breach this Stipulation in accordance with paragraph 13(b) or (c) (each such breach, an

"Automatic Termination Event"), the United States need not provide notice to the Debtors prior to termination or a right to cure such breach, *provided*, *however*, that the United States shall provide the Debtors with notice of an Automatic Termination Event as soon as reasonably practicable thereafter.

15. If this Stipulation is terminated based on any Debtors' Breach excluding termination under paragraph 13(d) or 13(e), the Debtors shall waive any and all rights to bring a Suspension Challenge, and, in accordance with the terms of this Stipulation, shall make no assertion in any court or administrative forum that the Medicare Suspensions constitute a violation of the automatic stay or an act of bankruptcy discrimination pursuant to section 525 of the Bankruptcy Code, *provided*, *however*, in all cases the Debtors reserve all rights to contest the treatment of particular claims in accordance with the Medicare Program as set forth in paragraph 5. If the Stipulation is terminated for any reason other than Debtors' Breach, then, notwithstanding the dismissal of the Complaint with prejudice set forth in paragraph 4 hereof, the Debtors shall have the right on or after the Termination Date, to file a Suspension Challenge, *provided that* the United States reserves all rights to contest the Suspension Challenge, including arguments concerning the Court's subject matter jurisdiction over any issues raised in the Suspension Challenge.

16. Without conceding that the Bankruptcy Court has jurisdiction over disputes concerning CMS' (or its agents') audits or investigations, or any other matter concerning which jurisdiction is reserved to HHS under Medicare law and regulation, the Parties agree they shall engage in ordinary and customary communications aimed at the efficient coordination and resolution of outstanding audits.

17. Nothing in this Stipulation is an admission by any Party, and no Party shall offer this Stipulation as evidence concerning liability, scienter, materiality, or falsity in any proceeding.

The Debtors shall not offer the limitation or modification of the Medicare Suspensions, or any subsequent payment of Debtors' claims submitted to CMS, as evidence concerning liability, scienter, materiality or falsity in any proceeding.

18. This Stipulation is without prejudice to the CMS' rights to impose any subsequent suspension in accordance with the Medicare Act and applicable rules and regulations, including without limitation for purported postpetition fraud or criminal activity by the Debtors (any such suspension, a "Postpetition Suspension"), *provided*, *however*, that, in all cases, the basis for any Postpetition Suspension shall be postpetition conduct of the Debtors and the Debtors reserve all rights to contest such Postpetition Suspension under applicable provisions of the Bankruptcy Code or under applicable non-bankruptcy law.

19. The United States' entry into this Stipulation shall not constitute or effectuate a waiver of sovereign immunity or a consent to the Court's jurisdiction or authority to adjudicate any matter, including without limitation, the Medicare Suspensions and any claims arising from the FCA investigation.

20. Each Party hereto agrees that it has fully participated in the drafting of this Stipulation. The rule of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Stipulation or any of its provisions.

21. This is the full and complete agreement of the Parties, and each Party has entered into this Stipulation voluntarily and without duress.

22. Any disputes regarding the rights arising hereunder shall be governed by federal law and shall be resolved by the Court.

23. This Stipulation is subject to the approval of the Court and is of no force and effect until so approved.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 23, 2026
Wilmington, Delaware

**JONATHAN D. GUYNN**
**Acting Assistant Attorney General**
**Civil Division**

*/s/ Seth B. Shapiro*
Seth B. Shapiro (D.C. Bar No. 433988)
Augustus T. Curtis
Marcus S. Sacks
Rodney A. Morris
Andrew D. Warner
U.S. Department of Justice – Civil Litigation
Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
TEL: (202) 514-7164
Email: seth.shapiro@usdoj.gov

*Attorneys for the United States of America*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Ryan M. Bartley*
Michael R. Nestor (Del. No. 3526)
Matthew B. Lunn (Del. No. 4119)
Ryan M. Bartley (Del. No. 4985)
Michael S. Neiburg (Del. No. 5275)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com
mlunn@ycst.com
rbartley@ycst.com
mneiburg@ycst.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

**ALSTON & BIRD LLP**
Gerard S. Catalanello (admitted *pro hac vice*)
Ryan M. Philp (admitted *pro hac vice*)
Seth M. Cohen (admitted *pro hac vice*)
William Hao (admitted *pro hac vice*)
Dylan Cassidy (admitted *pro hac vice*)
90 Park Avenue, 15th Floor
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: Gerard.Catalanello@alston.com
Ryan.Philp@alston.com
Seth.Cohen@alston.com
William.Hao@alston.com
Dylan.Cassidy@alston.com

-and-

**ALSTON & BIRD LLP**
Leah Fiorenza McNeill (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: Leah.McNeill@alston.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**IT IS SO ORDERED:**

Thomas M. Horan

**Dated: November 24th, 2026**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**